## G. & C. MERRIAM COMPANY *v.* SAALFIELD AND OGILVIE.

### APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF OHIO.

No. 178.   Argued January 14, 17, 1916.—Decided April 17, 1916.

Whether the District Court has acquired jurisdiction over the person of defendant may be reviewed by this court on direct appeal under § 238, Judicial Code.

An affidavit of one not a party to an action showing on its face that it was to be used only as evidence for defendants, *held* in this case not to be construed as an appearance by the party making it.

Only a final judgment is *res judicata* as between the parties; nor is a decree *res judicata* as against a third party participating in the defense unless it is so far final as to be *res judicata* against the defendant himself.

Even though one not a party to the action might be estopped by final decree if and when made, he cannot be brought into the suit by ancillary proceedings before final decree as if he were already estopped.

One not a defendant, but who is estopped by the decree because of having exercised control of the defense and who is not a resident of the district, cannot be brought into the action by the filing of a supplemental bill and mere notice to, and substituted service on, him without service of original process within the district.

Such a supplemental bill is not dependent on or ancillary to the original suit, in the sense that jurisdiction of it follows jurisdiction of the original cause.

The doctrine of *res judicata* furnishes a rule for the decision of a subsequent case between the same parties or their privies respecting the same cause of action, and only applies when the subsequent action has been brought.

THE facts, which. involve the jurisdiction of this court on appeal from the District Court under § 238, Judicial Code, and the jurisdiction of the District Court to make

and enforce a decree based on substituted service of process, are stated in the opinion.

*Mr. William B. Hale,* with whom *Mr. James A. Ford* was on the brief, for appellant:

Ogilvie was privy to the original suit, and was an actual, although not an ostensible, party thereto, in such a real sense that the decree will be *res judicata* against him.

The District Court erred in declining jurisdiction upon the sole ground that Ogilvie's defense of the suit was unknown to petitioner until after the interlocutory decree, and that, therefore, Ogilvie was not bound.

The District Court for the Northern District of Ohio, Eastern Division, had jurisdiction of Ogilvie notwithstanding he resides in the Southern District of New York, because: he submitted to the jurisdiction and waived objections, by voluntarily coming in and defending the suit; and the supplemental bill is a dependent and ancillary proceeding.

Substituted service, or mere actual notice, is sufficient to subject a party to the jurisdiction of the court in any ancillary proceeding and sufficient service was had in this case.

Ogilvie's affidavit in opposition to the motion for an injunction upon the supplemental bill, argues the case upon the merits, and subjects him to the jurisdiction of the court.

*Mr. Wade H. Ellis,* with whom *Mr. Challen B. Ellis* was on the brief, for appellees.

MR. JUSTICE PITNEY delivered the opinion of the court.

This is a direct appeal from the District Court under § 238, Jud. Code, upon the sole question of the jurisdiction

of that court to make and enforce a final decree *in personam* against appellee, George W. Ogilvie. The decree was founded upon a supplemental bill making Ogilvie a party to a suit already pending, and upon substituted service of process on persons said to represent him as attorneys in the State of Ohio, he being a citizen and resident of the State of New York, and not having been personally served.

The facts are as follows: In December 1908, appellant filed its original bill against Saalfield in the then Circuit Court of the United States for the Northern District of Ohio, for relief against unfair competition in the business of publishing and selling dictionaries. Saalfield was duly served with process, appeared, and made defense. The Circuit Court having dismissed the bill, the Circuit Court of Appeals reversed the decree (190 Fed. Rep. 927; 198 Fed. Rep. 369), and remanded the cause with direction for an injunction and an accounting in conformity with its opinion. The District Court made a decree in accordance with the mandate September 11, 1912, with an order of reference for the accounting. Thereafter and on December 16, 1912, the supplemental bill was filed, setting up in substance that since the entry of the decree of September 11 complainant had discovered, and it charged the fact to be, that Ogilvie had from the beginning actively conducted, controlled, and directed the defense of the suit, having selected, retained, and paid, as solicitors and counsel for defendant Saalfield, the firm of Weed, Miller and Nason, of Cleveland, Ohio, and Mr. George F. Bean, of Boston, Massachusetts, who, in pursuance of said retainer, appeared on behalf of Saalfield, but acted for and under instructions of Ogilvie; that in fact Ogilvie was the proprietor of the dictionaries involved in the suit, which were published and sold for his benefit and profit by Saalfield under a contract providing for the payment of royalties to Ogilvie; that pending the suit Saalfield had

transferred and assigned to the Saalfield Publishing Company, a corporation, his business of publishing and selling the dictionaries; that the company, as successor of and claiming through and under Saalfield, was bound by all the proceedings in the suit, and that it was then carrying on the business, under contract with Ogilvie; and that by reason of the facts mentioned Ogilvie had made himself privy to the suit, and an actual though not a nominal party thereto, and was bound by the proceedings and decree therein. Appropriate relief was prayed against Saalfield, the Saalfield Publishing Company, and Ogilvie.

Upon the filing of the supplemental bill and an affidavit setting forth that Ogilvie was a non-resident of the Northern District of Ohio, and that as alleged in the supplemental bill the firm of Weed, Miller and Nason, of Cleveland, and George F. Bean, of Boston, Massachusetts, who had appeared respectively as solicitors and counsel for defendant Saalfield in the defense of the suit, were in fact retained and employed by Ogilvie for that purpose and paid by him and acted under his instructions and directions, complainant moved for and obtained an order authorizing substituted service of process against Ogilvie, to be made within the District upon the Cleveland attorneys, and in the District of Massachusetts upon George F. Bean. Service was made accordingly, and the process returned; and it appearing from an affidavit made by defendant, Ogilvie, and filed in the cause on February 22, 1913, that he had had actual notice of the supplemental bill, an interlocutory decree *pro confesso* was entered, and this was followed, on October 16, 1913, by a final decree for the recovery against him of profits amounting with interest to $81,312.78, besides costs. Thereafter Ogilvie, by solicitors appearing specially for the purpose, moved to quash the service of the writ of subpœna issued against him and to set aside all proceedings based thereon. The District Court, having heard testimony, granted the

motion, and at the same time denied a petition filed by complainant for enforcement of the final decree against Ogilvie; and from final orders entered for carrying into effect this decision, complainant has appealed to this court.

There is a motion to dismiss, based upon the familiar ground that the "jurisdiction of the court" referred to in § 238, Jud. Code, means its jurisdiction as a Federal court, and not its general jurisdiction as a judicial tribunal; the insistence being that the contention of complainant below presented no more than a general question of procedure in equity, and not one peculiar to the District Court as a Federal court. But the distinction referred to bears upon the nature of the jurisdiction exercised or refused to be exercised after a valid service of process upon the defendant, and does not affect the question whether the court has acquired jurisdiction over the person, which is the one here involved. This question may be reviewed on direct appeal. *Shepard* v. *Adams*, 168 U. S. 618, 623; *Remington* v. *Cent. Pac. R. R.*, 198 U. S. 95, 99; *Board of Trade* v. *Hammond Elevator Co.*, 198 U. S. 424, 434; *Commercial Accident Co.* v. *Davis*, 213 U. S. 245, 256; *Mechanical Appliance Co.* v. *Castleman*, 215 U. S. 437, 440; *Herndon-Carter Co.* v. *Norris & Co.*, 224 U. S. 496, 498. In *Bache* v. *Hunt*, 193 U. S. 523, the decision that was held not reviewable on direct appeal was rendered upon a plea to the jurisdiction of the court over the subject-matter. In *Courtney* v. *Pradt*, 196 U. S. 89, the suit had been removed from a Kentucky state court to the United States Circuit Court, where Pradt filed a special demurrer, assigning as causes that the court had not jurisdiction of the person or of the subject-matter. The court dismissed the suit for want of jurisdiction, and it appeared from its opinion that this was done because Pradt, who was sued as executor, was appointed as such in Wisconsin, and a suit against a Wis-

consin executor could not be maintained in the Kentucky state court, nor in the Federal court. The question of jurisdiction was not certified to this court, and the appeal was therefore dismissed. These cases are plainly distinguishable. The present motion to dismiss must be denied.

Appellant's case upon the merits is rested upon the theory that Ogilvie was privy to the original suit against Saalfield, and an actual though not an ostensible party thereto, in such a real sense that the final decree therein would be *res judicata* against him; that the District Court had jurisdiction to entertain the suit as against him notwithstanding he resided outside the district, because by voluntarily coming in and defending for Saalfield he had submitted to the jurisdiction and waived the objection, and because the supplemental bill was a dependent and ancillary proceeding, and therefore properly brought in the district wherein the original proceeding was pending; and, finally, that because of its being an ancillary proceeding, substituted service upon the solicitors representing Ogilvie in the original proceeding was sufficient to subject him to the jurisdiction for the purposes of the supplemental bill. There is a faint attempt to sustain the jurisdiction on the theory that Ogilvie's affidavit, filed February 22, 1913, as mentioned in the interlocutory decree *pro confesso*, amounted to a general appearance, because it was submitted in opposition to a motion for injunction on the supplemental bill, and because it "argued the case upon the merits." This may be overruled at once. The affidavit shows on its face that it was to be used only as evidence for defendants Saalfield and the Publishing Company, and was not to be construed as an appearance by Ogilvie.

The District Court, while raising some question whether the solicitors and counsel who had appeared for Saalfield at Ogilvie's expense had not concluded their services in

Ogilvie's behalf prior to the filing of the supplemental bill, yet rested its decision substantially upon the ground that complainant did not know that Ogilvie had any connection with Saalfield or the Saalfield Publishing Company until after the making of the decree of September 11, 1912, upon the going down of the mandate from the Circuit Court of Appeals; and that for this reason Ogilvie could not have taken advantage of that decree had it been adverse to complainant, and therefore was not estopped by it, since estoppels must be mutual.

In so holding, the court applied the doctrine that has been laid down in a number of cases, that a third party does not become bound by a decree because of his participation in the defense unless his conduct in that regard was open and avowed or otherwise known to the opposite party, so that the latter would have been concluded by an adverse judgment. See *Andrews* v. *National Pipe Works*, 76 Fed. Rep. 166, 173; *Lane* v. *Welds*, 99 Fed. Rep. 286, 288. We need not consider the soundness of the doctrine, for appellant does not question it, insisting only that it is not applicable here because Ogilvie's control of the defense made in Saalfield's name became known to appellant during the progress of the suit, and before final decree; it being contended that the decree of September 11, 1912, was interlocutory and not final.

But it is familiar law that only a final judgment is *res judicata* as between the parties. And it is evident that a decree cannot be *res judicata* as against a third party participating in the defense unless it is so far final as to be *res judicata* against the defendant himself. Hence, if the decree of September 11 was not final as between appellant and Saalfield, it cannot be *res judicata* as against Ogilvie; and thus the fundamental ground for proceeding against the latter by supplemental bill with substituted service of process disappears. This sufficiently shows the weakness of appellant's position, which, upon analysis, is

found to be this: that upon the theory that Ogilvie would be estopped by a final decree if and when made, it sought to bring him into the suit, before final decree, as if he were already estopped. However convenient this might be to a complainant in appellant's position, it is inconsistent with elementary principles.

But, assuming for argument's sake that the decree was final, and that Ogilvie was fully estopped by it because of having taken charge and exercised control of Saalfield's defense through solicitors and counsel retained and paid by himself; and assuming that their employment had not been terminated at the time the supplemental bill was filed; the question of the sufficiency of the proceedings taken by way of substituted service to bring Ogilvie within the jurisdiction of the court still remains, and this depends upon whether the supplemental bill is a dependent and ancillary proceeding, jurisdiction of which follows jurisdiction of the original cause and may be exerted upon mere notice to the party without service of original process within the district. It seems to be thought that because Ogilvie was identified in interest with the defendant in the original suit and had and exercised the right to make defense and control the proceedings and appeal from the decree, he may be treated for all purposes as an actual party to the record. But this by no means follows. The doctrine of *res judicata* furnishes a rule for the decision of a subsequent case between the same parties or their privies respecting the same cause of action. Obviously, the rule for decision applies only when the subsequent action has been brought. So far as the supplemental bill seeks to bring in Ogilvie as a new party and obtain relief against him it is not, in any proper sense, dependent upon or ancillary to the original suit against Saalfield. It is not analogous to a suit for an injunction against the prosecution of a previous suit or the enforcement of a judgment therein. It has not

for its object some further dealing with the same subject-matter. Ogilvie is not in the position of one who, pending a suit about property, has acquired an interest in the subject-matter. The object of the original bill was to obtain an injunction and recover profits from Saalfield; that of the supplemental bill is to obtain an injunction and an accounting of profits against Ogilvie respecting the same transactions. But the merits are not to be adjudicated against him until he is brought into court, and as against him the supplemental bill is an original, not an ancillary, proceeding. In *Dunn* v. *Clarke*, 8 Pet. 1, one Graham had recovered a judgment at law in an action of ejectment against the complainants, Clarke and others, in the United States Circuit Court, jurisdiction depending upon diversity of citizenship. Graham having died, the defendant, Dunn, held the land recovered in trust under his will. Clarke and others filed their bill in the same court, praying for an injunction against the judgment and for a decree that the land in controversy be reconveyed. All the complainants and defendants were residents of the same State (Ohio). This court said: "No doubt is entertained by the court, that jurisdiction of the case may be sustained, so far as to stay execution on the judgment at law against Dunn. He is the representative of Graham; and although he is a citizen of Ohio, yet this fact, under the circumstances, will not deprive this court of an equitable control over the judgment. But beyond this, the decree of this court cannot extend. Of the action at law, the Circuit Court had jurisdiction; and no change in the residence or condition of the parties can take away a jurisdiction which has once attached. If Graham had lived, the Circuit Court might have issued an injunction to his judgment at law, without a personal service of process, except on his counsel; and as Dunn is his representative, the court may do the same thing, as against him. The injunction

bill is not considered an original bill between the same parties, as at law: but, if other parties are made in the bill, and different interests involved, it must be considered, to that extent at least, an original bill; and the jurisdiction of the Circuit Court must depend upon the citizenship of the parties. In the present case, several persons are made defendants who were not parties or privies to the suit at law, and no jurisdiction as to them can be exercised, by this or the Circuit Court." So far as it shows the distinction between an original bill and one that is not to be so considered, the case is in point upon the present question. The reference to "privies" must be taken in connection with the subject-matter, which in that case was the ownership of land.

No case to which we are referred, nor any other that we have found,[1] goes to the extent of sustaining as an ancillary proceeding a bill interposed for the purpose of obtaining a decree *in personam* against a party upon the ground that he had participated in the defense of a previous action against another party so as to become bound upon the doctrine of *res judicata*. *Kelley* v. *T. L. Smith Co.* (C. C. A., 7th), 196 Fed. Rep. 466, is referred to. In that case Kelley, a citizen of New York, and McConnell, a citizen of Illinois, had commenced an action in a Wisconsin state court to compel the secretary of the Smith

[1] See *Minnesota Co.* v. *St. Paul Co.*, 2 Wall. 609, 633; *Freeman* v. *Howe*, 24 How. 450, 460; *Krippendorf* v. *Hyde*, 110 U. S. 276, 285; *Clarke* v. *Mathewson*, 12 Pet. 164, 171; *Webb* v. *Barnwall*, 116 U. S. 193, 197; *Covell* v. *Heyman*, 111 U. S. 176, 179; *Dewey* v. *West Fairmont Gas Coal Co.*, 123 U. S. 329, 333; *Gumbel* v. *Pitkin*, 124 U. S. 131, 144; *Morgan's Co.* v. *Texas Central Ry.*, 137 U. S. 171, 201; *Byers* v. *McAuley*, 149 U. S. 608, 614; *Root* v. *Woolworth*, 150 U. S. 401, 413; *White* v. *Ewing*, 159 U. S. 36, 39; *Carey* v. *Houston & Texas Ry.*, 161 U. S. 115, 130; *Wabash R. R.* v. *Adelbert College*, 208 U. S. 38, 54; *Cortes Co.* v. *Thannhauser*, 9 Fed. Rep. 226; *Crellin* v. *Ely*, 13 Fed. Rep. 420; *Abraham* v. *North German Fire Ins. Co.*, 37 Fed. Rep. 731; *Gasquet* v. *Fidelity Trust Co.*, 57 Fed. Rep. 80.

Company to transfer certain shares of stock standing in Kelley's name to McConnell, as his assignee. A firm of Milwaukee attorneys brought the action, and an attorney connected with that firm was in possession of the certificate as agent of McConnell. Thereupon the Company and its secretary filed in the United States Circuit Court a bill asserting that the equitable title to the shares was involved in a suit already pending in that court, to which the company was a party defendant; that thus different parties, in different courts, were insisting that complainants transfer the same shares to each, and if complainants should comply with the demand of either they would be unable to transfer the shares to the other if so ordered by a court decree, and that they had no interest in the shares, and were willing to transfer them to the party found to be the owner. On the showing that Kelley and McConnell were not to be found in the district, and that the stock certificate was within the district, in the hands of their attorneys and agent having authority to assert and preserve their rights, the court ordered the subpœna and the notice of application for an interlocutory injunction to be served, and they were served, upon said attorneys and agent. The Circuit Court overruled a demurrer, and the Court of Appeals sustained this decree, not, however, upon the ground that the suit was an ancillary proceeding in aid of the court's jurisdiction in a pending suit, but upon the ground that as an independent and original bill it presented a subject cognizable in a Circuit Court of the United States, and that although jurisdiction *in personam* could not be acquired by service of process under Equity Rule 13, because of the absence of the defendants, substituted service was permissible under the then Equity Rule 90, by analogy to the English practice. Without intimating any view as to the correctness of this reasoning, it is sufficient to say that the decision has no pertinency to the question here presented.

Upon these grounds, we are of opinion that substituted service of process against Ogilvie was inadmissible, and that the District Court did not err in quashing the service and setting aside the proceedings based thereon, nor in refusing appellant's petition for enforcement of the decree against him.

*Final orders affirmed.*